## A94A1561. LANCE et al. v. AMERICAN EDWARDS LABORATORIES et al.
(452 SE2d 185)

McMURRAY, Presiding Judge.

Glenda Lance filed an action against her physician, his employer and the manufacturer and distributors of a medical device (designed for implantation into the human stomach) known as the Garren-Edwards Gastric Bubble ("the gastric bubble"), alleging medical malpractice, breach of express warranty, breach of implied warranty and

products liability. Her spouse, Floyd Lance, sued for loss of consortium. Summary judgment was entered in favor of Ms. Lance's physician and his employer and this judgment was affirmed in *Lance v. Elliott*, 202 Ga. App. 164 (413 SE2d 486).

The Lances dismissed their original complaint and later filed a renewal action against the designer and manufacturer of the gastric bubble, American Edwards Laboratories, and the distributors of the gastric bubble, American Hospital Supply Corporation and Baxter Travenol Laboratories, Inc., n/k/a Baxter International, Inc. (defendants), seeking damages allegedly sustained when a gastric bubble ruptured through a hernia in Glenda Lance's abdominal wall. The Lances based their claims on theories of strict liability, negligent design and negligent manufacture. Defendants denied the material allegations of the complaint and filed a motion for summary judgment, contending the doctrine of federal preemption bars the Lances' products liability claims. Defendants argued in their supporting brief that the gastric bubble is subject to the Medical Device Amendments ("MDA") to the Federal Food, Drug & Cosmetic Act, 21 USC § 360c, and that their compliance with all statutory and regulatory requirements of the MDA precludes imposition of higher state standards for design, manufacture and use of the gastric bubble.

The evidence, construed in a light which most favorably supports the Lances' claims, reveals the following: The gastric bubble is a medical device used for treatment of severe obesity. It is designed to decrease food cravings via insertion, inflation and floatation of a bubble in the upper region of a patient's stomach. The gastric bubble is available only upon prescription, application (insertion) and supervision of a physician and is not readily recommended for patients with abdominal wall hernias. Such patients are at high risk for serious complications, i.e., hernial ruptures.

Glenda Lance consulted a physician regarding her problem with chronic obesity and, despite Lance's history of abdominal surgery and hernias, this physician suggested use of a gastric bubble for treatment of Ms. Lance's condition. The physician advised Ms. Lance of certain dangers associated with use of the gastric bubble, but he did not inform her that the gastric bubble "should not be inserted in a person with an incisional hernia. [Nor was it ever] indicated to [Ms. Lance] that because [she] had a prior incisional hernia, that the gastric bubble should not be used. [Ms. Lance] was never given any information from the manufacturer that suggested that in a patient with a prior incisional hernia there was a possibility that the gastric bubble would deflate and migrate to the incisional hernia."

On April 7, 1987, a gastric bubble was inserted into Glenda Lance's stomach by her physician and, within 20 days, Ms. Lance began experiencing severe abdominal pain. However, the problem was

not accurately diagnosed until June 13, 1987, when the gastric bubble in Ms. Lance's body burst through a hernia in her abdominal wall. The device was then surgically removed.[1]

The trial court granted defendants' motion for summary judgment "based on the preemption doctrine [and] the court's finding [that the] medical device at issue is dispensed by prescription only and [that] any obligation to warn the patient is the doctor's." This appeal followed. *Held*:

The Lances contend the trial court erred in granting defendants' motion for summary judgment, arguing that genuine issues of material fact remain as to defendants' liability for failing to warn her of the known danger of inserting a gastric bubble into a patient with an "incisional" hernia. Defendants contend they had no such common-law duty to warn because of federal preemption under the MDA. See 21 USC § 360k (a).

"The Supremacy Clause of the United States Constitution dictates that federal law preempts inconsistent state law. U. S. Const., Art. VI, cl. 2. 'Pre-emption may be either express or implied, and is "compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U. S. 519, 525 (1977).' *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U. S. 141, 152 (102 SC 3014, 73 LE2d 664) (1982). Although it is often necessary to examine legislative history to determine whether Congress intended to preempt state law, 'when a federal statute unambiguously precludes certain types of state (law), we need go no further than the statutory language to determine whether the state (law) is preempted.' *Exxon Corp. v. Hunt*, 475 U. S. 355, 362 [(106 SC 1103, 89 LE2d 364) (1986)]." *Poloney v. Tambrands, Inc.*, 260 Ga. 850 (1) (412 SE2d 526). In the absence of express preemptive language, Congressional intent may be inferred "where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation. *Rice v. Santa Fe Elevator Corp.*, 331 U. S. 218, 230 (1947)." *Hillsborough County, Fla. v. Automated Med. Laboratories*, 471 U. S. 707, 713 (105 SC 2371, 85 LE2d 714).

In the case sub judice, defendants cite no specific federal provision imposing a duty upon them to warn consumers of dangers associated with use of the gastric bubble and they assert no persuasive argument that federal regulation leaves no room for supplementary state regulation requiring warning labels or notices for devices similar

---

[1] For a more detailed recitation of the facts see *Lance v. Elliott*, 202 Ga. App. 164, supra.

to the gastric bubble. Further, we have examined the MDA and find no barriers to state regulations of medical devices similar to the gastric bubble. See *Hillsborough County, Fla. v. Automated Med. Laboratories*, 471 U. S. 707, 713, supra. Compare *Poloney v. Tambrands, Inc.*, 260 Ga. 850 (1), supra. It therefore appears the trial court erred in granting defendants' motion for summary judgment "based on the preemption doctrine." However, we find no error in the trial court's ruling that defendants had no duty to warn Ms. Lance of dangers associated with use of a gastric bubble in patients with abdominal hernias.

In *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517 (434 SE2d 63), a majority of the Court of Appeals of Georgia held that pharmacists have no common-law duty to warn a customer or notify a physician that a drug is being prescribed in a dangerous amount, stating that it is the duty of the prescribing physician to warn the patient of any dangers associated with taking the drug. Id. at 520 (2), 522, supra. This court reasoned that the duty to warn was solely with the treating physician because the decision to employ prescription medication involves professional assessment of medical risks in light of the physician's knowledge of a patient's particular needs and susceptibilities. *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517, 520 (2), 521, supra. This same logic applies in the case sub judice.

It is undisputed that the gastric bubble is available only upon prescription, application (insertion) and supervision of a physician and that a gastric bubble was inserted into the stomach of Glenda Lance pursuant to her physician's advice and prescription. Consequently, Glenda Lance's treating physician had sole responsibility for advising his patient of dangers associated with use of the gastric bubble, not the designer and manufacturer and the distributors of the device. In fact, any information supplied to Ms. Lance by defendants regarding dangers associated with use of the gastric bubble may have compromised the doctor-patient relationship and thus impaired the best medical treatment for Ms. Lance's chronic condition. It thus follows that no practical conditions (or means) existed for defendants to supply Glenda Lance with notice that the gastric bubble is contraindicated for use in patients with abdominal hernias. Defendants simply had no common-law duty to warn Ms. Lance of the risks associated with use of the gastric bubble. *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517, 520 (2), supra. Compare *Davis v. Wyeth Laboratories*, 399 F2d 121 (1968), where the manufacturer of a prescription drug (polio vaccine) was required to warn consumers of risks associated with use of the prescription medication because the drug was distributed without an individualized balancing by a physician of the particular risks involved.

The trial court did not err in granting defendants' motion for

summary judgment.

*Judgment affirmed. Pope, C. J., and Smith, J., concur specially.*

POPE, Chief Judge, concurring specially.

I concur with the judgment of the majority; however, I disagree with the holding in *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517 (434 SE2d 63) (1993), and believe the majority's reliance on the case is misplaced.

In *Eckerd*, a majority of this court held that pharmacists have no common-law duty to warn patients of possible error. In my dissent, I agreed with the Washington Supreme Court which attributed to a pharmacist the limited duty "to accurately fill a prescription and to be alert for clear errors or mistakes. . . ." (Citations and punctuation omitted.) Id. at 525 (Pope, C. J., dissenting). In my view, a pharmacist should be required to question a prescription which is erroneous or irregular in order to protect the patient and the physician from errors which could not be detected by the patient which are apparent to a properly trained pharmacist. Id. at 526.

The relationship between pharmacist and patient is not analogous to that between the manufacturer of a medical device and patient. The limited duty which I attribute to the pharmacist arises by virtue of his intermediary role between the physician and the patient. The pharmacist exerts some control over dispensing prescription medications. He is aware of potentially hazardous side effects and is in a position to discuss with the physician or the patient any "obvious inadequacies appearing on the face of the prescription which create a substantial risk of serious harm to the plaintiff." Id. No such intermediary position exists for the manufacturer of a medical device which must be prescribed, purchased, surgically implanted and supervised by a physician. At all times the device and its application are under the control of the prescribing physician. The conditions do not exist and the manufacturer has no practical means to supply a patient with notice of any risks or side effects associated with the use of its product. Therefore, I concur in the majority opinion that defendant had no common-law duty to warn Ms. Lance of the risks associated with the use of the gastric bubble and would affirm the trial court's grant of summary judgment to the defendant.

SMITH, Judge, concurring specially.

Unlike Chief Judge Pope, I believe *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517 (434 SE2d 63) (1993) was correctly decided, but I agree with him that it is inappropriate to rely upon that case as authority here. As Chief Judge Pope's concurring opinion states, these defendants had no common-law duty to warn because the device and its application at all times were under the control of the prescribing

physician.

DECIDED DECEMBER 2, 1994 —
RECONSIDERATION DENIED DECEMBER 19, 1994.

*Saia, Richardson & Meinken, Joseph J. Saia,* for appellants.
*Swift, Currie, McGhee & Hiers, James B. Hiers, Jr., Susan A. Dewberry,* for appellees.