## A00A1984. WILLIAMS et al. v. AMERICAN MEDICAL SYSTEMS et al.
### (548 SE2d 371)

ANDREWS, Presiding Judge.

Bennie Williams appeals from the trial court's grant of summary judgment to American Medical Systems (AMS), the manufacturer of a penile implant which had to be surgically removed from him after an infection developed. Williams sued for negligent manufacture and inspection, strict liability, and failure to warn.[1] The trial court granted summary judgment to AMS on all claims. Because we conclude there is an issue of fact on the strict liability claim, we affirm in part and reverse in part.

Viewed in the light most favorable to Williams as the nonmoving party, the facts were as follows. Dr. Harrison, a urologist, performed the operation implanting an AMS 700 Inflatable Penile Implant Prosthesis into Williams's abdomen and scrotum. Dr. Harrison inflated the implant in the operating room, and it was working normally. There is no evidence of any damage to the implant before or after surgery. About a month later, while Williams was still recovering from the surgery, an infection developed, and Dr. Harrison removed the implant.[2] Six months later, Williams underwent the same procedure, with Dr. Harrison implanting another AMS 700 Prosthesis, this time without complications.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving

---

[1] Williams's wife also sued for loss of consortium.

[2] Williams also sued Dr. Harrison for failing to warn him of the risks associated with the implant, but the case against Dr. Harrison is not before us on appeal.

party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the non-moving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

(Citation, punctuation and emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

1. The trial court erred in granting summary judgment to AMS on Williams's strict liability claim. Georgia's strict liability statute, OCGA § 51-1-11 (b) (1), provides:

The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

Under this statute, the plaintiff is not required to show negligence by the manufacturer, but must show that the "product, when sold, was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained." (Punctuation omitted.) *Center Chemical Co. v. Parzini*, 234 Ga. 868, 869 (2) (218 SE2d 580) (1975). It is not necessary for the plaintiff to specify precisely the nature of the defect. He must show that the device did not operate as intended and this was the proximate cause of his injuries. *Firestone Tire &c. Co. v. King*, 145 Ga. App. 840, 842 (244 SE2d 905) (1978).

After removing the implant, Dr. Harrison wrote in his post-operative report: "Postoperative diagnosis: Disconnection of tubing between the reservoir and cylinder, causing the reservoir fluid to leak into the scrotal compartment, thereby causing infection." Although Dr. Harrison later stated in his deposition that an infection from the incision could have spread and caused swelling, thus forcing the tubing to disconnect, this does not negate his original post-operative diagnosis. Accordingly, there is some evidence that the device did not operate as intended and this caused the infection which required removal of the implant. *Gen. Motors Corp. v. Blake*,

237 Ga. App. 426, 430 (515 SE2d 166) (1999); *King*, supra; *Parzini*, supra.

2. The trial court correctly granted summary judgment to AMS on Williams's claims for negligent manufacture and negligent inspection. In support of its motion for summary judgment, AMS submitted the affidavit of the director of research for AMS stating that "[e]very inflatable penile prosthesis made at AMS is subjected to inspection, functional testing and sterilization before it is allowed to leave AMS."

Williams produced no evidence of negligent manufacture or inspection. He argues that res ipsa loquitur applies to this issue because there is no evidence that he did anything to cause the device to malfunction and there is no evidence that Dr. Harrison did not implant the device properly.

> The elements of the res ipsa loquitur doctrine are: (1) injury of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. . . . [T]he accident must also be of a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence. Moreover, res ipsa loquitur should be applied with caution and only in extreme cases; it is not applicable when there is an intermediary cause which produced or could produce the injury, or where there is direct unambiguous testimony as to the absence of negligence by the defendant, or where there is no fair inference that the defendant was negligent.

(Citations, punctuation and emphasis omitted.) *Cornelius v. Lawrence*, 203 Ga. App. 113-114 (2) (416 SE2d 115) (1992).

While the evidence here may have been sufficient to establish that an inherent defect in the penile implant caused it to separate, which is enough to prove a strict liability claim, it was not demonstrated that the defect was the result of any negligence by AMS. *Home Ins. Co. v. Caterpillar, Inc.*, 202 Ga. App. 522 (414 SE2d 735) (1992).

Williams contends on appeal that it is not necessary to show exclusive control when making a res ipsa loquitur argument. He provides no authority in support of this, and we find none. As stated above, the plaintiff must prove exclusive control when arguing res ipsa loquitur.

> Negligence is not to be presumed, but is a matter for affirmative proof. The expression res ipsa loquitur means that the transaction speaks for itself. It is a rule of evidence which allows an inference of negligence to arise from the happening of an event causing an injury to another where it is shown that the defendant owned, operated, and maintained, or controlled and was responsible for the management and maintenance of the thing doing the damage and the accident was a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence. The principal basis for application of the rule of res ipsa loquitur is that the occurrence involved would not have occurred but for negligence, and this negligence may properly be charged to the person in exclusive control of the instrumentality.

(Citations and punctuation omitted.) *U. S. Fidelity &c. Co. v. J. I. Case Co.*, 209 Ga. App. 61, 64-65 (3) (432 SE2d 654) (1993).

Here, the device was not under the exclusive control of the manufacturer. In addition, there is evidence that the tubing could have disconnected for causes unrelated to any negligence of AMS. For instance, as previously noted, Dr. Harrison testified that Williams was a diabetic and, therefore, his incisions were slow to heal. As a result, it was possible that the infection spread from the incision, causing swelling which forced the tubing apart. Therefore, because res ipsa loquitur does not apply in this case, the trial court correctly granted summary judgment on these issues.

3. The trial court correctly granted summary judgment to AMS on Williams's claim for failure to warn him of the danger that the tubing could disconnect.[3] This issue is controlled adversely to Williams by *Lance v. American Edwards Laboratories*, 215 Ga. App. 713, 716 (452 SE2d 185) (1994). In *Lance*, this Court held that when a device can be prescribed and inserted only by a physician, that treating physician has sole responsibility for advising the patient of dangers associated with the use of the device. The designer, manufacturer, and distributor are under no duty to the patient. Id. at 716. Indeed, any information supplied to Williams by AMS regarding dangers associated with the device could compromise the doctor-patient relationship. Id. Therefore, AMS did not have the responsibility or the means to warn Williams of any dangers associated with the implant. Id.

---

[3] We note that the package insert does contain the warning that there is a risk of infection with surgery to implant the device and men with diabetes have an increased risk of infection. It also states that product wear, component disconnection, or other mechanical problems may occur.

*Judgment affirmed in part and reversed in part. Ruffin and Ellington, JJ., concur.*

DECIDED MARCH 7, 2001 —
RECONSIDERATION DENIED MARCH 21, 2001 — 

*Jerry B. Hatcher*, for appellants.
*Jennings, Sparwath & Satcher, Milton B. Satcher, Love & Willingham, John A. Gilleland*, for appellees.